TIMOTHY THOMAS NOAH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Noah v. Commissioner
Docket No. 14409-90
United States Tax Court
T.C. Memo 1992-18; 1992 Tax Ct. Memo LEXIS 23; 63 T.C.M. (CCH) 1761; T.C.M. (RIA) 92018; January 8, 1992, Filed *23 Decision will be entered under Rule 155. Lawrence E. Meuwissen, for petitioner. Albert B. Kerkhove, for respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies of $ 39,079 and $ 27,675 in petitioner's Federal income taxes for 1985 and 1986, respectively, and additions to tax under sections 6653(a) and 6661 for each year. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. In a partial settlement agreement filed after trial, each party made various concessions. In his opening brief, petitioner conceded additional issues, including a statute of limitations issue. He continues to claim deductions for business expenses, farm expenses, vehicle license fees, and charitable contributions. Also in dispute are the additions to tax under sections 6653(a) and 6661. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Angus, Minnesota, at the time his petition was filed. *24 Petitioner is a Roman Catholic priest, ordained on June 1, 1947. During the years in issue, he was assigned by the Bishop of Crookston, Minnesota, to serve as a parish priest and pastor of Holy Trinity Church in Tabor, Minnesota. Petitioner's brother, Daniel Anthony Noah, also served as a Roman Catholic priest in the Crookston diocese. Prior to and during the years in issue, petitioner managed financial affairs for his brother and other members of his family. Among the assets managed by petitioner was a "family farm". The principal farmhouse was a split-level dwelling in which the upstairs level was used for residential purposes by petitioner and other members of his family. Petitioner and his brother provided counseling services on the downstairs level. They did not receive income for these services. Certain other buildings on the farm were rented to tenants. As compensation for his services as a priest, petitioner received a salary of $ 4,980 in 1985 and $ 5,280 in 1986. Petitioner also received allowances of $ 175 per month for a car and $ 125 per month for depreciation of a car. In a memorandum dated February 27, 1986, priests of the diocese were advised by the Bishop *25 of increased salary and benefits for 1986: I would like to remind everyone that the division of the priests' income into the three categories of salary, car allowance and car depreciation is for our purposes only and does not affect your tax forms. The entire $ 9,000 ($ 8,520) is income. Depreciation must be deducted using IRS Form 4562 and other car expenses deducted using Form 1040 Schedule C and/or Form 2106.
On his Federal income tax returns for 1985 and 1986 (Forms 1040), petitioner reported only the salary portion of his compensation and did not include as income the car allowances. Petitioner's salary was reported on Schedules C attached to his Forms 1040 for 1985 and 1986. On those Schedules C, petitioner claimed business travel expense deductions of $ 2,554.00 in 1985 and $ 1,175.86 in 1986. Petitioner failed to maintain adequate records substantiating the time, place, and business purpose of the business travel expenses claimed. Among the items claimed as business travel expenses were two airline tickets to Boston so that petitioner and his brother could attend a nephew's graduation. On his tax returns for 1985 and 1986, petitioner reported some, but not *26 all, of the rental income received in relation to the farm. Expenses claimed on Schedule E included medical insurance and duplications of items claimed on petitioner's brother's Federal income tax returns. Depreciation and other expenses relating to the principal farmhouse, which was not rented, were deducted on Form 4835, Farm Rental Income and Expenses. Deductions of $ 1,392.14 and $ 340.25 were claimed as "License" for 1985 and 1986, respectively, on Form 4835. Petitioner claimed medical expense deductions on his returns for 1985 and 1986. The deduction claimed for 1986 included an amount paid for a dividend-paying insurance policy for petitioner's brother. Petitioner claimed charitable contribution deductions on his return for 1985. The deductions claimed included $ 1,200 duplicated as a deduction on petitioner's brother's return for 1985 and $ 1,500 in two checks that were redeposited into petitioner's bank account. Petitioner's returns and his brother's returns were prepared from lists that petitioner made, and no preparer checked those lists for duplications or other errors in categorizing expenses as deductible or nondeductible. Petitioner did not advise his preparer *27 about the unreported rental income. During the years in issue, petitioner's sister, Veronica Horton, held herself out as a tax preparer. She was neither a certified public accountant nor an enrolled agent. In 1989, during an audit of his tax returns for 1985 and 1986, petitioner stated that his returns were prepared by Bernadette Clemons. OPINION Petitioner has the burden of proof on all remaining issues in this case. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). In his post-trial brief, petitioner prudently abandoned many of his previous claims. Still in contention, however, are certain specific deductions and the additions to tax. Deductions in Dispute
Petitioner's brief states: The issues that remain in the case concern expenses that were disallowed by the respondent in his broad brush approach. The respondent disallowed expenses claimed on Schedule C and disallowed depreciation and other farm expenses as well as itemized deductions. While we cannot argue on this record, that the respondent erred on every item, there are specific expenses in each category that should be allowed. This brief addresses those points.
The expenses *28 identified by petitioner are as follows: Item
1985
1986
Office expenses
$ 500.00
$ 500.00
Travel expenses
1,832.00
1,186.00
Depreciation on farm
storage building
1,710.00
1,710.00
Gasoline, fuel and oil
1,831.00
1,219.00
Insurance
1,947.60
2,202.00
Labor
555.00
542.00
Repairs
3,050.00
5,446.00
License fees
1,392.00
340.00
Charitable contributions
1,626.00
2,264.00
In support of these deductions, petitioner testified from his check register. His testimony, however, was replete with phrases such as "I would say", "I would guess", and "I would expect". Much of the testimony was equivalent to the statement that the returns were correct when they were filed. Because there were so many obvious errors in those returns, however, such vague testimony is unpersuasive. With respect to the claimed office expenses of $ 500 each year, petitioner testified: Q Did you pay someone for secretarial services? A I did. Q Who did you pay? A Different people. Different people who could type. I don't type. You notice that from the way I write here. Q For what purpose was this typing done? Was it personal? Was it business? A No, no, this was correspondence *29 with people that I counsel. Q So this relates to the office at the farm? A Yes. Q Now, did you know whether some of this expense was allowed by the IRS? A I don't know. * * * Q * * * Did you also make payments for secretarial services in 1986 totaling $ 500? A That's right, yeah. Q And was it also paid to different people for typing? A That's right. Q And did that relate to your counseling services? A That's right. Well, it would also relate to farm expenses because there were bills that came in for the operation of the farm that had to be taken care of, see?
The claim of $ 500 for each year was not supported by receipts, canceled checks, or any other documentary evidence. Similarly, petitioner's testimony was vague about the claimed travel expenses. Petitioner testified that he and his brother served as chaplains on overseas pilgrimages and had to pay for the domestic portion of the trips. Upon inquiry by his counsel, he testified: Q And where did you go on these pilgrimages? A Some to Panama, some to Medjugoria, some to Rome, some to Lourdes, some to Ireland. Q Okay. A I don't remember all of them, but that's the majority of them. Q All right, and did *30 you have conferences that you were required to attend or seminars part of the time? A Yes. Q Was there one in Minneapolis or St. Paul at St. Thomas College that year? Do you recall that? A That's right, yeah. Q And is that what these expenses relate to? A That's what they relate to, yes. Q And do those relate to your services as a priest? A As a priest, yes. * * * Q In 1986 when you wrote this down [$ 448] under "business transportation" what was that for? A I would say trips that I had to take in the line of business. That's all I can say on that one. Q Was it by auto or air or what? Do you know? A To give you an honest answer, I'd have to look in my check book to find corresponding figures and to see if I find an airline ticket, but I would guess that it would be by auto. * * * Q * * * there's another item on the other side here called "business trips," at $ 1,176.86. A I would go along with that being airline with regard to the pilgrimages.
Although petitioner admitted that his counseling business was not an income-producing activity, he contends that he is entitled to deduct the expenditures for secretarial services and travel as business expenses. As *31 to the secretarial services, petitioner's testimony is inadequate in failing to provide for allocation of the amount claimed as secretarial service to the rental activity or other income-producing activities. Respondent also contends, and we agree, that petitioner has not proven actual payments in the amount of $ 500 for secretarial assistance each year (an amount that appears to be an estimate). Petitioner replies that respondent agreed at trial that there was no dispute that the amounts had been paid. Petitioner's assertion, however, is incorrect. In his trial memorandum, respondent specifically asserted that no proof of payment had been provided for the $ 500 items. Respondent's agreement at trial (based on his trial memorandum) related only to farm expenses and not to other claimed deductions. Respondent contends, and we agree, that petitioner cannot be allowed deductions for travel expenses because he has failed to satisfy the substantiation requirements of section 274(d) and sections 1.274-5(b)(2) and 1.274-5(c)(2), Income Tax Regs. Petitioner did not produce any documentary evidence of the type required by the regulations, and his testimony was vague and uncertain and *32 did not provide the details required. Such testimony is not sufficient to satisfy his burden of proof. The next group of expenses claimed by petitioner, from depreciation on a farm storage building through repairs, relates to the family farm. Petitioner failed to establish the correct allocation of any of these expenses to his personal family use and to the rental activity. With respect to the farm storage building, for example, there is no evidence that the building was actually rented to a tenant. Petitioner merely testified that "He uses it off and on". As to insurance, petitioner testified that he did not know which premiums related to automobile insurance and which to "insurance for the land". On questioning by his attorney, he testified: Q Oh, you have insurance on the land itself? How does that work? A That's just insurance for farm insurance. Q Related to liabilities or what do you have? A I suppose it amounts to hill damage or stuff like that, destruction of buildings.
With respect to the deduction for farm labor, petitioner testified: Q * * * On the $ 500 item, did you pay someone for farm labor in 1985? A I did. Q Who did you pay? A Sometimes I will *33 pay my nephew. Sometimes I will pay anyone I can get to help me out. Q All right. There's more than one person involved in this thing? A More than one person involved. Q How is that payment made? A In cash. Q And what is it for? A For labor, helping me with the tractor, driving the tractor, and running road grader, cutting grass, working around the shelter belt, things like that.
Again, petitioner's testimony failed to allocate any expenses between maintenance of the residential part of the farm and the rental activity. The amounts claimed for repairs included expenditures that, according to petitioner's testimony, were for work inside the house. According to petitioner's brief, "In 1986, these repairs included a $ 3,000 expenditure for the removal of trees and grading a hill in the middle of farmland so that it would increase the acreage that could be farmed." Respondent contends, and we agree, that this item appears to be a capital expenditure not currently deductible. See sec. 263. There is not a sufficient basis in the record for allowance of any additional repairs expense. In his brief, petitioner contends that the license fees deducted as farm expenses in *34 1985 and 1986 "obviously included the sales tax on a new vehicle" acquired in 1985. He now contends that the amounts are deductible under section 164 as taxes. Respondent contends that the attempt to recharacterize these items as taxes is a new issue, and respondent objects. While we would not preclude deductibility of taxes as itemized deductions because they were claimed on Schedule F instead of on Schedule A, we cannot be sure from the record that the claimed license fees in fact represent deductible taxes. Again, there is no receipt, sales invoice, or canceled check substantiating the claimed characterization of the payment. The final claimed deduction relates to charitable contributions. Respondent has allowed some contributions as having been substantiated. We cannot tell from petitioner's submissions which items he is claiming that have not been allowed. Certain disallowed amounts, however, are reflected by checks payable to petitioner's brother and other persons who are not exempt entities. We are persuaded that no allowances for charitable contributions may be made beyond those previously conceded by respondent. Additions to Tax
Petitioner contends that he *35 should be relieved of the additions to tax because he was unsophisticated, relied on his sister to prepare his tax returns, and acted in good faith. Many of the reasons for our rejecting these contentions are the same as the reasons for rejecting his claims to additional deductions. Essentially, there are far too many errors on his returns to be excused. There were substantial amounts of underreported income, duplicated deductions, deductions of personal items as business expenses, and deductions of items that were returned to petitioner. Petitioner failed to maintain adequate books and records to substantiate the deductions that he claimed. Part of his problem arose from use of cash, which he explained as follows: A In case you don't understand my situation, when I first had trouble with Internal Revenue and with the treatment that I had received from Internal Revenue agents, I cashed everything that I got. Every time I got a salary check I cashed it, and every time I got a payment for car loans or anything like that, I cashed it.
We also are unpersuaded by petitioner's claim of lack of sophistication and reliance on his sister. Petitioner affirmatively represents that *36 he managed financial affairs for his brother and other members of his family and that he managed the family farm. The record also reflects petitioner's control over numerous and substantial certificates of deposit ultimately determined to belong to other persons. He testified at trial that he "would expect" that his sister prepared the returns for the years in issue, but he had previously represented that another person had prepared those returns. In any event, petitioner provided the list of expenses from which his returns were prepared, failed to advise the preparer of all of his items of income, and has not shown that any reliance was on a person who was competent in the preparation of tax returns. He testified that the preparer did not ask him any questions about the items provided to her. Finally, petitioner had specific information from the bishop of his diocese about the manner of reporting his compensation as a priest, and he neglected to report all of that compensation. On consideration of the entire record, petitioner has not satisfied his burden of proving that he is entitled to any additional deductions or that he was not negligent. Assuming that, on recomputation *37 of the income tax owed for each year, the statutory definition of a substantial understatement is met, he has presented no ground for avoiding the additions to tax under section 6661. To reflect respondent's concessions, Decision will be entered under Rule 155.